UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00407-RJC-DCK

| | |
|---|---|
| MICHAEL S. JENKINS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LTD FINANCIAL SERVICES, L.P.,<br><br>Defendant. | <u>Order</u> |

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss, Doc. No. 14, and the Plaintiff's Motion to Remand, Doc. No. 24. For the reasons below, the Motion to Remand is **GRANTED** and the Motion to Dismiss is **DENIED** as moot.

## I. BACKGROUND

### A. Factual Background

Michael Jenkins claims that LTD Financial Services violated state and federal law when it transmitted information about his credit-card debt to a letter-mailing vendor. LTD, a debt collector, received the right to collect Jenkins's debt, which was in default. Am. Compl. ¶¶ 9, 17–18, Doc. No. 7. To collect the debt, LTD hired a vendor to mail a letter to Jenkins. Am. Compl. ¶¶ 19–20, Doc. No. 7. After LTD transmitted information about Jenkins's debt to the vendor, the vendor "populated" the information into a "prewritten template" and mailed the letter to Jenkins. Am. Compl. ¶¶ 21, 24, Doc. No. 7.

### B. Procedural Background

Jenkins brought this putative class action to challenge LTD's use of a letter-mailing vendor. He claims that LTD violated the Fair Debt Collection Practices Act ("FDCPA"), which generally

prohibits debt collectors from "communicat[ing]" with third parties "in connection with the collection of any debt," 15 U.S.C. § 1692c(b). Am. Compl. ¶¶ 36–53, Doc. No. 7. His Amended Complaint also alleges that LTD violated the FDCPA's prohibition on "unfair" and "unconscionable" debt-collection practices, 15 U.S.C. § 1692f. Am. Compl. ¶¶ 54–57, Doc. No. 7. And it asserts claims under the North Carolina Debt Collection Act, *see* N.C. Gen. Stat. § 75-53, the North Carolina Collection Agency Act, *see* N.C. Gen. Stat. § 58-70-105, and the North Carolina Unfair and Deceptive Trade Practices Act, *see* N.C. Gen. Stat. § 75-1.1. Am. Compl. ¶¶ 58–80, Doc. No. 7.[1]

Jenkins filed his initial complaint in the Superior Court of Gaston County, North Carolina. Compl. at 1, Doc. No. 1-1 at 6. LTD removed the case to this Court on the grounds that this Court has federal-question jurisdiction over Jenkins's FDCPA claims. Notice of Removal ¶ 3, Doc. No. 1; *see* 28 U.S.C. §§ 1331, 1441(a). After the parties briefed LTD's Motion to Dismiss, Jenkins moved to remand this case to state court, arguing that he lacks Article III standing to assert an FDCPA claim in federal court. Mot. Remand 1, Doc. No. 24.

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss is well known. "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fed. Nat'l Mortg. Ass'n v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked under Rule 12(b)(6) will survive if it contains enough factual matter "to state

---

[1] In his Opposition to LTD's Motion to Dismiss, Jenkins declines to oppose LTD's Motion with respect to his claim under 15 U.S.C. § 1692f, his claim under the Unfair and Deceptive Trade Practices Act (to the extent that it is premised on violations of the Debt Collection Act), and his request for treble damages. Pl.'s Opp'n Def.'s Mot. Dismiss 3 n.1, Doc. No. 20.

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An allegation is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary, and the statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration omitted). Additionally, when ruling on a motion to dismiss, a court "should view the complaint in a light most favorable to the plaintiff," *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), and it must accept the complaint's factual allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And, at the motion-to-dismiss stage, "[c]ourts cannot weigh the facts or assess the evidence," though "a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014) (emphasis omitted).

### III. DISCUSSION

The Amended Complaint does not satisfy Article III's standing requirements. Specifically, it fails to allege a "concrete" injury in fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the concreteness requirement, a plaintiff must show that his alleged injury "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 341 (2016)). Plaintiffs make that showing by identifying "a close historical or common-law analogue for their asserted injury." *Id.*

LTD, which "bears the burden of demonstrating that removal jurisdiction is proper," *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008), identifies one arguably comparable common-law harm: the public disclosure of private information. Mem. Opp'n Mot. Remand 5–6, Doc. No. 27 (citing Restatement (Second) of Torts § 652D (Am. L. Inst. 1977)). But Jenkins's Amended Complaint does not plead that kind of harm.[2]

The public-disclosure tort allows a plaintiff to sue when someone "gives publicity to a matter concerning [his] private life." Restatement (Second) of Torts § 652D (Am. L. Inst. 1977). "Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* § 652D cmt. a. Such publicity causes the plaintiff to suffer an "invasion of his privacy." *Id.* § 652D. Here, Jenkins fails to allege that his private information was given any publicity, so he does not plead the kind of harm caused by the public-disclosure tort: an "invasion of . . . privacy." *Id.*

Jenkins alleges that the letter-mailing vendor "populated" his private information "into a prewritten template," "printed" the letter, and "mailed" it to him. Am. Compl. ¶ 24, Doc. No. 7. But he does not allege that the information "was actually read and not merely processed." *TransUnion*, 141 S. Ct. at 2210 n.6; *see also Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 2022 WL 4102824, at *8 (11th Cir. Sept. 8, 2022) (en banc) (holding that the plaintiff lacked

---

[2] A plaintiff must show that his alleged injury is similar in *kind* to the harm remedied by a common-law cause of action, though he need not show that the harms are similar in *degree*. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) ("Our inquiry is focused on types of harms protected at common law, not the precise point at which those harms become actionable.").

4

standing to bring an FDCPA claim where he "did not even allege that a single employee ever read or understood the information about his debt"); *id.* at *13–14 (Pryor, C.J., concurring).[3] Unread information does not inflict a traditionally recognized harm. *See TransUnion*, 141 S. Ct. at 2210 (stating that information that is not read "does not harm anyone"). Given the possibility that printing vendors "merely process[]" the information they receive, the Supreme Court has doubted whether "disclosures to printing vendors [were] actionable publications" at common law, and the Court has rejected the argument that information is "published" when it is sent to vendors who "print[]" it and "mail[]" it to the owners of the information. *Id.* at 2210 n.6.

Because Jenkins does not allege that anyone read his private information, he does not plead an "invasion of his privacy"—the kind of harm that the public-disclosure tort is aimed at redressing. Restatement (Second) of Torts § 652D (Am. L. Inst. 1977). Rather, he alleges a "bare procedural violation[], divorced from any concrete harm." *TransUnion*, 141 S. Ct. at 2213. He thus lacks Article III standing to assert his FDCPA claim. He asserts no other federal claims, and LTD does not invoke diversity jurisdiction, so the Court lacks subject-matter jurisdiction over this case. And because the Court declines to exercise supplemental jurisdiction over Jenkins's state-law claims, this case will be remanded.

---

[3] Jenkins's Amended Complaint states that "[t]he core facts presented to the Appeals Court in Hunstein's case are virtually identical to those alleged in this Complaint." Am. Compl. ¶ 46, Doc. No. 7 (emphasis omitted).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Remand, Doc. No. 24, is **GRANTED**.

2. The Motion to Dismiss, Doc. No. 14, is **DENIED** as moot.

3. This case is hereby **REMANDED** to the Superior Court of Gaston County, North Carolina, Case No. 21-CVS-2680.

The Clerk of Court is directed to close this case.

Signed: September 30, 2022

Robert J. Conrad, Jr.
United States District Judge